UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS TAFELSKI,

                Plaintiff,                              Case No. 05-71547

vs.                                        HONORABLE DENISE PAGE HOOD

NOVARTIS PHARMACEUTICALS,

                Defendant.

_____/

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment, filed March 8, 2006. Plaintiff filed his Brief in Opposition to Defendant's Motion for Summary Judgment on March 28, 2006. The Defendant filed a Reply on April 10, 2006.

Plaintiff Thomas Tafelski alleges in his Complaint filed on April 20, 2005, two counts against Defendant Novatis Pharmaceuticals: (1) Violations of the Family Medical Leave Act (FMLA); and (2) Retaliation.

Defendant asserts that Summary Judgment is appropriate because of the three FMLA violations alleged to have been committed by Defendant, one is barred by the statute of limitations, another fails because Plaintiff did not adhere to notice requirements, and the last fails because Plaintiff has not sustained any damages.

1

For the reasons stated herein, this Court GRANTS Defendant's Motion for Summary Judgment and DISMISSES Plaintiff's Complaint.

## II.  STATEMENT OF FACTS

### A.  Background

Plaintiff began working for Defendant in July of 2001 as a senior care specialty representative.  (Mot. For Summ. J. at 5).  This position involved calling on physicians to provide information regarding Defendant's products.  (Mot. For Summ. J. at 5).  During his performance review for 2003, Plaintiff's record keeping was discussed.  Based upon concerns regarding Plaintiff's record keeping, Defendant's employee and Plaintiff's supervisor, Mr. Curtis Sosnowski [hereinafter "Mr. Sosnowski"], began investigating Plaintiff's call records in February, 2004.  (Mot. For Summ. J. at 5).  Based on Mr. Sosnowski's findings, a meeting was held on April 16, 2004 with Plaintiff, Mr. Sosnowski, and other employees of Defendant.  (Mot. For Summ. J. at 6).  At the end of the meeting, Plaintiff was given the option to resign or be terminated for falsifying business records.  (Mot. For Summ. J. at 7).  Plaintiff opted to resign.

### B.  FMLA Claims

Plaintiff's FMLA claims are based on three alleged violations: (1) alleged interference while Plaintiff was off work for surgery on his Achilles tendon beginning in October, 2002; (2) an alleged refusal to allow leave during, and after Plaintiff's wife's pregnancy in February, 2004; and (3) alleged retaliation for leave taken due to an illness in late March or early April, 2004.  (Mot. For Summ. J. at 7).

2

### C.  Achilles Surgery

Defendant granted Plaintiff leave from October 2002 through February 2003 when Plaintiff had surgery on his Achilles tendon.  (Mot. For Summ. J. at 7).  Plaintiff claims interference, in that Mr. Sosnowski violated company policy by contacting Plaintiff during his disability leave, informing Plaintiff that his career would be detrimentally affected if he failed to attend Mr. Sosnowski's holiday party.  (Pl.'s Br. in Opposition to Summ. J. at 1).

### D.  Plaintiff Wife's Pregnancy - February 2004

Plaintiff alleges that he expressed his desire to Mr. Sosnowski to take time off for the birth of his child in February 2004.  (Pl.'s Br. in Opposition to Summ. J. at 4).  The Defendant alleges that Plaintiff did not claim that his wife was suffering any complications with her pregnancy, but rather that she was going through "an emotional pregnancy...because she was dealing with two [children] under the age of five and then also having a baby."  (Mot. For Summ. J. at 8).  The Defendant contends that Plaintiff wanted to take leave "to be able to help her and be there."  (Mot. For Summ. J. at 8).  On February 4, 2004, while Mr. Sosnowski was riding along with Plaintiff to evaluate his performance, Plaintiff received a call from his wife asking if he could come home early.  (Mot. For Summ. J. at 8).  Plaintiff 's request to leave work was denied.  Plaintill also claims that he was denied leave when his child was born.  Plaintiff alleges that he was denied the opportunity to take approved FMLA time off work by Mr. Sosnowski.  (Pl.'s Br. in Opposition to Summ. J. at 4).

### E.  March/April 2004 Illness

Plaintiff alleges that he was retaliated against for taking time off for an illness between March 29, 2004 through April 5, 2004.  (Mot. For Summ. J. at 9).  According to doctor's notes that Plaintiff alleges he provided to Mr. Sosnowski, Plaintiff was diagnosed by one physician with

"sinustitis/otitis," and another physician with "acute pharyngitis and bilateral otitis media." (Mot. For Summ. J. at 9-10). Plaintiff's illness and request for FMLA time coincided with Defendant's national sales meeting on April 14, 2004 in Las Vegas, Nevada. (Pl.'s Br. in Opposition to Summ. J. at 5). Plaintiff alleges that he told Mr. Sosnowski that he could not attend the meeting because his illness was contagious, he could not fly, and that he needed surgery. (Pl.'s Br. in Opposition to Summ. J. at 5). Plaintiff had surgery in February of 2005. (Pl.'s Br. in Opposition to Summ. J. at 5). Defendant states that Plaintiff did take time off between March 29, 2004 and April 5, 2004, and returned to work on April 5, 2004 without any change to his position, salary, or benefits. (Mot. For Summ. J. at 9).

### III.  STANDARD OR REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a

> situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV.  APPLICABLE LAW & ANALYSIS - FMLA

### A.  Achilles Surgery

29 U.S.C. § 2615(a)(1)-(2) states:

> (a) Interference with rights
>
> > (1) Exercise of rights
> >
> > It shall be unlawful for any employer to interfere, restrain, or deny the exercise of or attempt to exercise, any right provided under this subchapter.
> >
> > (2) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a)(1)-(2).

5

Defendant argues that under 29 U.S.C. § 2617(c)(1)[1], Plaintiff's claim of interference is time barred under the FMLA. (Mot. for Summ. J. at 11). Defendant states that Plaintiff filed his Complaint on April 20, 2005, more than two years after the alleged violation, which would have occurred between October 2002 and February 2003; the time Plaintiff was off from work due to his Achilles Surgery. (Mot. for Summ. J. at 11). Plaintiff argues that under the continuing violations doctrine, Plaintiff's claims are preserved. (Pl.'s Br. in Opposition to Summ. J. at 2). Plaintiff cites *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); and *Sharpe v. Cureton*, 319 F. 3d 259, 267 (6th Cir. 2003); to support the proposition that the continuing violations doctrine applies to the instant matter. (Pl.'s Br. in Opposition to Summ. J. at 3).

Defendant argues that Plaintiff failed to cite any authority in which the continuing violations doctrine was applied to FMLA claims. (Def.'s Reply Br. in Supp. of its Mot. for Summ. J. at 1). Defendant argues that Plaintiff's claim fails because, according to his deposition testimony, he objected to the phone calls and his required attendance at the holiday party at the time they occurred, during Plaintiff's disability leave, and thus he assumed then that such contact was a violation. (Def.'s Reply Br. in Supp. of its Mot. for Summ. J. at 2).

In determining when the statute of limitations begins to run, that is, when the cause of action accrues, [the court] follow[s] federal law. *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)

---

[1] 29 U.S.C. § 2617(c)(1) states:

> Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

6

(citing *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)).  "The statute of limitations commences

to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.

A plaintiff has reason to know of his injury when he should have discovered it through the exercise

of reasonable diligence."  *Id.  See also Kuhnle Bros., Inc.*, 103 F.3d at 520.

Plaintiff stated in his deposition:

> Q:  But did you get the time off?
>
> A:  Yes.   Although,  I – I  was  contacted  by  [Mr. Sosnowski]
> throughout, which company policy – he'd tell me company policy
> was he was not supposed to be contacting me.  But, you know, part
> of – one of the things he made me do was come to a holiday party at
> his house in – I think, Berkley where [he] used to live, Berkley or
> Ferndale – because it was part of the quote unquote team building
> experience that he wanted me to partake in.  I said, I'm on disability.
> And he goes, Well, I know, I know, but I think this would be very
> important to your career if you showed up to this holiday party.  I
> said, it's just a holiday party, why are you – you know, it's a team
> building exercise, because we were a new district.
>
> *****
>
> Q: There was no place for you to sit at this party?
>
> A: I don't recall him having a nice La-Z-Boy.  I do recall that – in the
> basement where the actual festivities were taking place, if you will,
> and so I had to go down steps in the basement.  The point being that
> I was on disability. [Mr. Sosnowski] told me that I had to attend
> because it would be detrimental if I didn't and it was a team building
> exercise.  He said think of it as, you know, getting together with your
> peers.  He's your direct report, he's your direct manager.  He knew
> he wasn't supposed to be contacting me at that point.  And he
> contacted me throughout letting me know how the territory was.  And
> at that point he said, Hey, you're going to get an invite to the holiday
> party.  I'd like you to be there.  I said, [Mr. Sosnowski], I'm on
> disability. I really don't feel like coming and interacting with people.
> And, you know, it's a work thing...

(Def.'s Reply Br. in Supp. of its Mot. for Summ. J., Ex. 2).

Plaintiff testified that he was aware that the actions of Mr. Sosnowski were a violation of company policy. As such, Plaintiff was aware of the FMLA violation on or before February 3, 2003, the date when he returned to work from the Achilles surgery. (Pl.'s Br. in Opposition to Summ. J. at 1; Def.'s Reply Br. in Supp. of its Mot. for Summ. J. at 1)

Plaintiff asserts that his Achilles claim falls within the continuing violations doctrine. In support of this argument, Plaintiff relies upon *Kuhnle Bros., Inc., Nat'l R.R. Passenger Corp.,* and *Sharpe*, *supra*. Plaintiff's reliance on this authority is misplaced. In *Kuhnle Bros. Inc.*, the plaintiff challenged whether or not the County's enforcement of a statute was a "continuing violation" that as a result did not start the statute of limitations until the County stopped enforcing the statute. *Kuhnle Bros. Inc.*, 103 F.3d at 520. In *Nat'l R.R. Passenger Corp.*, the Supreme Court stated that, in regard to Title VII hostile environment claims, that they are very different in kind from discrete acts, and such claims are based on the cumulative effect of individual acts. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115. Therefore, when a plaintiff files a claim under Title VII, provided that an act contributing to the claim occurred within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. *Id*. at 117.

Additionally, the Court notes that Plaintiff cites no authority in which the continuing violations doctrine has been applied to actions under the FMLA. Instead Plaintiff asserts that since the Sixth Circuit, in *Sharpe v. Cureton*, 319 F. 3d 259, 267 (6th Cir. 2003), extended the continuing violations doctrine to section 1983 claims, the same reasoning used in the *Sharpe* opinion should be applied to extend to FMLA claims. Even if this Court determined that extension of the continuing violations doctrine to FMLA cases is warranted, Plaintiff's claim would not fall within the purview of the exception. The doctrine does not apply where, as here, violations are committed

8

via "discrete acts." Discrete acts are "acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . ." *Id.* This is inapposite to violations that would fall within the doctrine, those "that cannot be said to occur on any particular day, but occur over a series of days or years." *Id.* Plaintiff's Achilles claim rests solely upon the discrete acts of Mr. Sosnowski's contacting him during his disability leave and requiring Plaintiff to attend his holiday party. These actions took place sometime between October 2002 and February 2003. The statute of limitations for Plaintiff's action is two years. Plaintiff's Complaint was filed on or about April 20, 2005. Plaintiff's claim as to his Achilles surgery is barred by the statute of limitations, as he filed his Complaint beyond the applicable limitations period.

### B.    Plaintiff Wife's Pregnancy - February 2004

Defendant argues that Plaintiff had knowledge of his pregnant wife's due date and did not provide Defendant with notice of this foreseeable incident. (Mot. For Summ. J. at 12). The Defendant points to 29 U.S.C. § 2612(e)(1)[2] to support the proposition that Plaintiff was required to provide notice. (Mot. For Summ. J. at 12). Defendant contends that Plaintiff was aware of Defendant's Human Resources Department, and that the department handled employee benefits. (Mot. For Summ. J. at 12). Defendant asserts that Plaintiff verbally expressed his desire for leave to Mr. Sosnowski on the morning of February 4, 2004, four days before his wife's due date, and that

---

[2] 29 U.S.C. § 2612(e)(1) states:

> In any case in which the necessity for leave under subparagraph (A) or (B) of subsection (a)(1) of this section is foreseeable based on an expected birth or placement, the employee shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the birth or placement requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

9

Plaintiff alleges that Mr. Sosnowski denied his request for time off.  (Mot. For Summ. J. at 12).
Defendant argues that because the request was made only four days before the expected delivery
date, Defendant was entitled to deny the request for leave.  (Mot. For Summ. J. at 12).

Plaintiff counters that the Defendant denies knowledge that Plaintiff requested time pursuant
to FMLA, and therefore has placed Plaintiff's credibility into question.  (Pl.'s Br. in Opposition to
Summ. J. at 4).  Plaintiff contends that when credibility is at issue, summary judgment is
inappropriate.  (Pl.'s Br. in Opposition to Summ. J. at 4).

The FMLA requires employees to provide 30 days advance notice of the leave, when the
need to take leave is foreseeable.  *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1382 (11th
Cir. 2005).  *See also* 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a).  If, though the leave is
foreseeable, "30 days notice is not practicable, such as because of a lack of knowledge of
approximately when the leave will be required to begin, a change in circumstances, or a medical
emergency, notice must be given as soon as practicable."  *Id*.  *See also* 29 C.F.R. § 825.302(a).
Similarly, if the need for leave is not foreseeable, notice must be given "as soon as practicable under
the facts and circumstances of the particular case."  *Id*.  *See also* 29 C.F.R. § 825.302(a).  In
interpreting the notice requirements of the FMLA, [the Eleventh Circuit] has held that "where an
employee's need for FMLA leave is unforeseeable, the employee need only provide her employer
with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-
qualifying reason."  *Id*. (citing *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997))
(emphasis omitted).

An employee is not required to assert expressly her right to take leave under the FMLA.  *Id*.
at 1383.  *See also* 29 C.F.R. §§ 825.3029(c), 825.303(b).  However, the notice must be "sufficient

10

to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Id.* 29 C.F.R. § 825.302(c). Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection. *Id.* (citing *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1209 (11th Cir. 2001). *See also* 29 C.F.R. § 825.303(b).

Plaintiff knew that his wife was pregnant, therefore the 30 day notice requirement would appear to apply in the instant matter. In his deposition, Plaintiff stated:

> Q: Let's go back to that then. Tell me, and I don't want you to tell me what you could have or might have done or might have done and what you imagine you did. I want to know exactly how you requested time off for your wife's pregnancy?
>
> A: On the day of the 4th of February, 2004, I – well, prior to that I told [Mr. Sosnowski] that my wife – this was our child. It was an emotional preganacy with her, because she was dealing with two under the age of five and then also having a baby. And I told him I wanted to take time off. And he –
>
> Q: How did you tell him?
>
> A: Through conversations, either a phone call or through – at a meeting. I mean we would meet occasionally for morning meetings. And then he was supposed to work with me, but he didn't really work with me.
>
> Q: Did you make a specific phone call for this purpose?
>
> A: Yeah, there were – to ask him for time off, because my wife was due and I – I wanted to be able to help her and be there. He told me I had to utilize vacation time prior to doing anything with time off for Family Medical.

******

11

Q: You also said Novartis said that you could take your vacation time?

A: No.  He told me I had to take my vacation time.

Q: So when you said Novartis you meant [Mr. Sosnowski]?

A: I mean [Mr. Sosnowski], yes.

Q: And what did he say exactly about that?

A: He said you need to burn your vacation time before you can request this.  And I said, Well, how do I go about the procedure?  And then the fourth – so I put in for vacation time.  Because my wife's original due date was the 8th of February.  My child was born on the 10th, but the original due date was on the 8th. So I knew those couple days prior to her due date I wanted – you know, if I had to start burning the time I was going to start doing that on the tail end, on the preceding.  And then I would take the Family Medical Leave on the back side of it, if he was going to allow me to.

(Mot. for Summ. J., Ex. A).

Plaintiff's testimony establishes that he was aware of his wife's due date, and would be subject to the 30 day notice requirement of the statute.  Plaintiff contends that he requested leave before February 4, 2004, and Defendant's denial of Plaintiff's assertion renders summary judgment inappropriate.  However, Plaintiff still fails to meet his burden of establishing that with these prior requests, he gave his employer adequate notice.  Plaintiff testified at his deposition that he had mentioned that he wanted to take family leave prior to February 4, 2004.  Other than this assertion, Plaintiff does not demonstrate that with these prior requests he gave his employer sufficient notice that Plaintiff needed qualifying FMLA leave, nor "the anticipated timing and duration of the leave, or whether these prior requests met the 30 day notice requirement.  *See* 29 C.F.R. § 825.302(a) and (c).  There also is no indication in the record that Plaintiff's wife's pregnancy was complicated by

12

a medical emergency, or that the facts and circumstances prevented Plaintiff from providing the 30 day notice as required under FMLA.

### C.  March/April 2004 Illness

Defendant argues that Plaintiff's claim that he was terminated from his employment with Defendant due to his medical leave between March 29, 2004 through April 5, 2004 is without merit. (Mot. for Summ. J. at 15).  Defendant contends that Plaintiff was terminated due to falsification of business records.  (Mot. for Summ. J. at 15).  Plaintiff argues that he was terminated for taking medical leave, and failure to attend the national sales meeting due to sinusitis/otitis.  (Pl.'s Br. in Opposition to Summ. J. at 4-5).  Plaintiff contends that this condition constitutes a serious medical condition within the meaning of FMLA  (Pl.'s Br. in Opposition to Summ. J. at 4-5).  Under Sixth Circuit precedent, the court examines claims of retaliation based on a plaintiff's exercise of FMLA rights in the same manner as other employment retaliation claims.  *Smith v. ACO, Inc.*, 368 F.Supp.2d 721, 731 (E.D. Mich. 2005).

To establish a prima facie case of retaliation under the FMLA, plaintiff must establish: (1) that he engaged in a statutorily protected activity; (2) that the employer knew of his protected activity; (3) that a causal connection existed between his protected activity and the adverse employment action. *Id*. (citing *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).  If a prima facie case is established, the employer must produce a legitimate non-discriminatory reason for its actions, upon which event a plaintiff must come forward with specific evidence of pretext.  *Id*.  In order "to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment

action for having exercised an FMLA right." *Id.* Thus, in the absence of direct evidence, the court employs the familiar *McDonnell Douglas* burden-shifting analysis. *Id.*

Defendant argues initially that Plaintiff cannot establish a prima facie case because Plaintiff's illness was not a serious health condition under the FMLA. (Mot. for Summ. J. at 16). Defendant cites *Beaver v. RGIS Inventory Specialists, Inc.*, 144 Fed.Appx. 452, 455 (6th Cir. 2005), for the proposition that Plaintiff's medical condition was not a serious health condition under FMLA. (Mot. for Summ. J. at 16). In *Beaver*, the former employee testified she was diagnosed by a physician with acute sinusitis, bronchitis, and an ear infection. *Id.* at 454. The employee also stated that the physician ordered her to postpone her flight home due to the danger of damage to her ear drum. *Id.*

"Serious health condition" is defined under the FMLA as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care ... or ... continuing treatment by a health care provider." *Id.* at 455. *See also* 29 C.F.R. § 825.114(a). Continuing treatment by a health care provider includes a "period of incapacity ... of more than three consecutive calendar days ... that also involves ... [t]reatment two or more times by a health care provider ... or ... treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." *Id.* The legislative history of the FMLA makes it clear that routine, commonplace illnesses of short duration are not covered by the statute. *Id.*

Plaintiff argues that Plaintiff requested time off work due to sinusitis/otitis which required surgery that was originally scheduled for May 14, 2004, but did not occur until February of 2005. (Pl.'s Br. in Opposition to Summ. J. at 4-5). Plaintiff alleges that he did not have surgery on May 14, 2004 because he was terminated and lost his health care benefits. (Pl.'s Br. in Opposition to

14

Summ. J. at 4).  Plaintiff cites no authority to demonstrate that his sinutitis/otitis would be considered a serious health condition under FMLA.

This Court finds that Plaintiff's condition was not a serious health condition as defined under the FMLA.  Plaintiff provided Defendant with a note from his doctor which indicated that he would not be able to attend work from March 30, 2004 to April 5, 2005 because of sinusitis/otitis.  (Mot. for Summ. J., Ex. G).  The note did not indicate that Plaintiff's condition required surgery at that point.  (Mot. for Summ. J., Ex. G).  Plaintiff prepared a handwritten note which indicated that he had scheduled surgery, but did not state that the doctor required the surgery.  (Mot. for Summ. J., Ex. G).  The Court notes that the Sixth Circuit has indicated that it deems "sinusitis, bronchitis, and an ear infection . . .[as] routine, short-term illnesses not covered by the FMLA." *Beaver*, 144 Fed. Appx. at 456.  Lastly, Plaintiff has failed to demonstrate that the doctor visit initiated treatment by a health care provider that resulted in a regimen of continuing treatment under the supervision of the health care provider.

Although this Court finds that Plaintiff did not have a serious health condition within the meaning of FMLA, even if the Court found otherwise, Plaintiff's claim would still fail to state a prima facie case.  There is no causal connection between Plaintiff's protected activity and the adverse employment action.

"The 'causal link' between the protected activity and adverse employment action is demonstrated by showing that the employer would not have taken the adverse action 'but for' the employee's protected activity." *ACO, Inc.*, 368 F. Supp.2d at 732 (citing *Agee v. Northwest Airlines Inc.*, 151 F. Supp.2d 890, 896 (E.D. Mich. 2001)).  No one factor is dispositive in the causal connection analysis and evidence that the defendant treated plaintiff differently from a similarly

situated employee or that the adverse action was taken shortly after the plaintiff engaged in the protected activity is relevant. *Id*. More importantly, temporal proximity alone is rarely enough to satisfy the causal element. *Id*. (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 536-566 (6th Cir. 2000; *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986)). In order to establish a causal link, [p]laintiff must establish that his employer had knowledge of his protected activity when it made the decision to discharge him; without knowledge of the protected activity, there can be no inference that the adverse action was taken because of the protected activity. *Id*.

Defendant asserts that Plaintiff's employment with Defendant ended because he falsified business records. (Mot. for Summ. J. at 17). Defendant contends that due to concerns about Plaintiff's record keeping, Mr. Sosnowski started investigating Plaintiff's call records in February 2004. (Mot. for Summ. J. at 17). Mr. Sosnowski investigated numerous suspicious entries in Plaintiff's call logs. (Mot. for Summ. J. at 17). The Defendant argues that as a result of his investigation, Mr. Sosnowski discussed these issues with his superiors in late February or early March 2004. (Mot. for Summ. J. at 17).

Plaintiff argues that he was terminated for attempting to take time off under FMLA. (Pl.'s Br. in Opposition to Summ. J. at 4-5). Plaintiff contends that Mr. Sosnowski threatened Plaintiff's job because he felt Plaintiff was taking "too much time off." (Pl.'s Br. in Opposition to Summ. J. at 5).

This Court finds that Plaintiff has not demonstrated that a causal link existed between any protected activity and an adverse employment action. Plaintiff was being investigated by the Defendant prior to his illness and absence from March 30, 2004 through April 5, 2004.

Additionally, Plaintiff's 2003 Performance Evaluation indicates that his employer was not completely pleased with his performance.

> You fell below expectations for performance in 2003.  The defined performance targets & personal accountabilities were not met.  Overall divisional and individual challenges presented themselves throughout the year . . . .

(Mot. for Summ. J., Ex. B).  Further,  Plaintiff was not terminated from his employment, he resigned.  (Mot. for Summ. J., Ex. D).  While Plaintiff's resignation letter only refers to falsification of one record, Mr. Sosnowski's affidavit indicates at least 11 records were falsified.  (Mot. for Summ. J., Ex. D; Ex. C).  Plaintiff has not argued that these records were not falsified, nor that the Defendant treated Plaintiff differently from a similarly situated employee.

## V.  CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 15, filed March 8, 2006]** is GRANTED.

IT IS FURTHER ORDERED that Defendant Novartis Pharmaceuticals Corporation's Motion in Limine to Exclude Evidence of Damages Not Disclosed in Plaintiff's Responses to Defendant's  Discovery Requests [**Docket Nos. 21 & 22, filed May 1, 2006**] is MOOT.

IT IS FURTHER ORDERED that Plaintiff's Complaint **[Docket No. 1, filed April 20, 2005]** is DISMISSED.


Dated: March 28, 2007             _/s/ DENISE PAGE HOOD_
Detroit, Michigan                 UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2007, by electronic and/or ordinary mail.

                     S/William F. Lewis
                     Case Manager